UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JULIA ANN KLAES,    )<br>      Plaintiff,    )<br>                          )<br>   vs.                   )<br>                          )<br>ADVOCATE CONSULTING LEGAL  )<br>GROUP, PLLC, f/k/a ADVOCATE    )<br>AIRCRAFT TAXATION COMPANY,  )<br>      Defendant.      ) | 1:09-cv-1023-LJM-WGH |

**ORDER ON DEFENDANT'S MOTION TO DISMISS, OR, ALTERNATIVELY TO TRANSFER**

This matter comes before the Court on defendant's, Advocate Consulting Legal Group, PLLC ("ACLG"), Motion to Dismiss, or Alternatively to Transfer. Dkt. No. 14. The plaintiff, Julia Ann Klaes ("Klaes"), initiated this action for both quid pro quo sexual harassment and hostile environment as well as retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The Court considered the parties' arguments, and for the following reasons ACLG's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

## I. BACKGROUND

For ease of understanding and as a result of the odd procedural posture of this case,[1] the Court will briefly outline the evolution of AATC and ACLG, and then it will address the specific facts surrounding Klaes' allegations.

### A. THE EVOLUTION OF AATC AND ACLG

AATC was incorporated in Florida in 1999. Dkt. No. 13-1 ¶ 4. In 2006, Louis Meiners ("Meiners"), owner and president of AATC, moved the company's headquarters to Naples, Florida. Dkt. No. 20-1 ¶ 10. By September 2006, AATC was operating exclusively out of Florida, but a few employees continued working from Indiana. Dkt. No. 13-1 ¶¶ 9-11. In September 2008, Meiners sold AATC's assets to his daughter and son-in-law, effective October 1, 2008. *Id.* ¶ 25. As new owners, Meiners' daughter and son-in-law formed ACLG, a new legal entity, in Florida to hold all of the assets they purchased from AATC. *Id.* ¶ 28.

### B. KLAES' ALLEGATIONS

AATC employed Klaes as a bookkeeper. Dkt. No. 20-1 ¶ 3. Meiners hired her in Indianapolis, and when she began work for AATC, it was still headquartered in Indianapolis.

---

[1]Although ACLG is the only named defendant on the docket, ACLG and Advocate Aircraft Taxation Company ("AATC") have made separate motions to dismiss by the same counsel and filed distinct briefing supporting each motion. Klaes responded to each motion separately. As a result, the Court is confronted with two distinct sets of briefing addressing motions pertaining to ACLG and AATC as distinct entities when ACLG is the sole named defendant in the action. Dkt. Nos. 12-15, 20, 26-27. Accordingly, the Court **DISMISSES** AATC's motion as **MOOT** and solely addresses the arguments raised in ACLG's motion.

*Id.* ¶ 8. When AATC moved its headquarters to Florida in 2006, it continued to employ multiple people in Indiana. *Id.* ¶ 11. Meiners moved with the headquarters to Florida. *Id.* ¶ 10. Klaes was one of the employees that remained in Indiana, where she worked out of her home. *Id.* ¶ 16. She continued her bookkeeping duties, received mail for AATC, acted as AATC's registered agent and used office equipment and supplies provided by AATC. *Id.* Beginning in 2006, all of AATC's decisions regarding hiring and termination took place in Florida. Dkt. No. 13-1 ¶ 14. As stated above, on October 1, 2008 AATC sold its assets to new owners who formed a new legal entity, ACLG, to hold AATC's assets. *Id.* ¶ 28. At that point, AATC ceased to employ any individuals. Dkt. No. 20-1 ¶ 22. Meiners continued to work for ACLG as a consultant after the asset sale. *Id.*

Klaes also continued to work for ACLG in some capacity after the asset sale. Dkt. No. 13-2 ¶ 19. on October 1, 2008, she was allegedly negotiating a long term contract for employment when the alleged conversation giving rise to Klaes quid pro quo harassment claim took place in Florida between Meiners and Klaes. Dkt. No. 13-1 ¶ 35-36. No contract was ever formed. Klaes claims that ACLG made her an independent contractor for "tax reasons" and initiated and paid for the creation of an Indiana limited liability company called "e-Assistant LLC" for Klaes to use to carry out her bookkeeping duties. Dkt. No. 26-2 ¶¶ 11-12. She was the only member of e-Assistant, and e-Assistant's only client was ACLG. *Id.* ¶¶ 14-15. ACLG claims that Klaes understood both that her last day of employment with AATC was September 30, 2008, and that she would not be re-employed by ACLG as anything other than an independent contractor. Dkt. No. 15-1 ¶¶ 17-19.

Conversely, Klaes claims ACLG [2] continued to treat her as an employee and merely named her an "independent contractor" for tax purposes. *Id.* ¶¶ 11-12. To support her claim, Klaes contends that she continued to receive benefits from ACLG, including participation in its health insurance plan; that her job duties and office location stayed the same; that she took on no other clients; that she did not enter a consulting agreement with ACLG; and that she considered herself an employee of ACLG. *Id.* ¶¶ 14-17. ACLG issued an IRS form W-2 to Klaes for the work that she performed for AATC from January 2008 through September 2008, and an IRS form 1099-MISC to Klaes for the work she performed for ACLG from October 2008 through December 2008. *Id.* ¶ 18.

## II. **STANDARD**

In considering a motion advanced under Rule 12(b), the Court examines the sufficiency of the plaintiff's complaint as opposed to the merits of the lawsuit, and directs dismissal only if it appears to a certainty that the plaintiff can establish no basis for asserting personal jurisdiction. The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff bearing on personal jurisdiction. Yet, if a complaint consists of conclusory allegations unsupported by facts, it fails even under the liberal standards of Rule 12(b).

---

[2]Throughout her briefing, Klaes refers to ACLG and AATC jointly as the "Company," apparently arguing that they are indistinguishable entities, or that ACLG is AATC's legal successor such that if AATC is subject to jurisdiction in Indiana, ACLG is also subject to jurisdiction in Indiana. Apparently under the same theory, Klaes refers to both AATC and ACLG as "Advocate Consulting" in her Complaint.

Rule 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person or entity. Fed. R. Civ. P. 12(b)(2). In considering a Rule 12(b)(2) motion to dismiss, the Court reviews any affidavits and other documentary evidence that have been filed, as long as factual disputes are resolved in favor of the non-movant. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). Because, here, the issue of personal jurisdiction will be determined in the absence of an evidentiary hearing, Klaes need only make a *prima facie* showing that ACLG is subject to personal jurisdiction. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

### III. DISCUSSION

In its motion, ACLG asserts several reasons why Klaes' claim should be dismissed. First, it argues that the Court should dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Second, it argues that the Court should dismiss Klaes' claim under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Finally, and in the alternative, it moves the Court to transfer venue under 28 U.S.C. § 1404(a). Because the Court concludes that Klaes' complaint should be dismissed based on a lack of personal jurisdiction, the Court need not consider ACLG's remaining arguments.

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *see Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). In Indiana, the determination of whether a court has personal jurisdiction over a defendant is determined by Indiana's long arm statute, Indiana Trial Rule 4.4. Trial Rule 4.4 lists several specific factors that, if present, would subject a defendant to the jurisdiction of Indiana Courts. *See* Ind. Trial R.

4.4. In addition, the rule states: "a court of [Indiana] may exercise jurisdiction on any basis not inconsistent with the Constitutions of [Indiana] or the United States." Ind. Trial R. 4.4(a). Therefore, the Court has jurisdiction over ACLG to the limits allowed by the Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006).

The Due Process Clause requires that a non-resident defendant have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction may be either general or specific. *See Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002). General jurisdiction makes a non-resident defendant amenable to suit within a particular forum regardless of the subject matter of the suit, based on a defendant's continuous and systematic contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Specific jurisdiction makes a non-resident defendant amenable only to suits arising out of or related to its contacts with the particular forum. *Id.* at 414.

For specific jurisdiction, due process requires that a non-resident defendant must have established his contacts with the forum state by purposefully availing himself of the privilege of conducting business there. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In other words, the defendant's

conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there.  *See id.* at 474.  It must be the activity of ACLG in the forum state that creates jurisdiction, not the conduct of Klaes or a third party.  *See Purdue Research Found.*, 338 F.3d at 780.

Klaes argues that ACLG is AATC's successor and, therefore, it is subject to general jurisdiction because AATC's contacts with Indiana are imputed to ACLG.  *See Purdue Research Found.,* 338 F.3d at 784 (noting that because a corporate successor stands in the shoes of its predecessor, it can expect to be haled into the same courts as its predecessor).  Generally, in an asset sale, the buyer is not the corporate successor to the seller.  *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind. 1994).  However, there are exceptions to the non-liability rule.  Klaes argues that ACLG fits into several exceptions that derive from state law.  However, the Court notes that Klaes' cause of action derives from Title VII.  The Seventh Circuit has held that, with regard to successor liability, federal common law, not state law, concerning successor liability applies to claims under Title VII.  *See Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986) (holding that successor liability, as articulated in *Musikiwama v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985), applies in Title VII cases).

Under federal common law, there are three criteria that the Court must consider when determining whether successor liability applies to a given case:  "(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the

predecessor and the successor." *Id.* Of the listed criteria, the first two are "critical." *Musikiwamba*, 760 F.2d at 750.

As to the first, ACLG asserts that Klaes did not provide ACLG notice of her claims against AATC until early November when her attorney sent a letter to Mr. Mark Meiners, Klaes' direct supervisor at AATC. AATC's sale of its assets closed on September 30 and, therefore, at the time that ACLG acquired AATC's asserts it had no knowledge of this potential liability. Because the successor liability doctrine is derived from equitable principles, "it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price." *Id.* Klaes did not plead and has put forth no evidence indicating that the first two "critical" factors were fulfilled. *See Interlease Aviation Investors II LLC v. Iowa Corp.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003) (noting that on a Rule 12 motion to dismiss for personal jurisdiction, any conflicts in the affidavits and pleadings should be resolved in the plaintiff's favor, but the "court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs"). Because ACLG lacked knowledge of the claim at the time of the asset sale, there can be no successor liability and, accordingly, AATC's contacts with Indiana cannot be imputed to ACLG for the purposes of personal jurisdiction.

In order to avoid this result, Klaes focuses on the continuity factor.[3] She looks to *EEOC v. Vucitech* to support the notion that the continuity factor is the "focus of the successor liability inquiry" regardless of whether the Court applies federal common law or Indiana law. 842 F.2d 936, 944-45 (7th Cir. 1988). Her reliance on *Vucitech* is misplaced. *Vucitech* confirms that the successor's notice of the predecessor's liability is a vital part of successor liability in employment discrimination cases. *See id.* at 944. Similarly in *Brend v. Sames Corp.*, No. 00 C 4677, 2002 U.S. Dist. LEXIS 12648, at *12-*13 (N.D. Ill. July 11, 2002), another case cited by Klaes, the court only focused on continuity because the successor's notice of the predecessor's claim was either undisputed or apparent. *Id.* Furthermore, *Brend* occurred in the context of simple contract liabilities, and the cases cited above indicate that the Seventh Circuit takes a different approach to successor liability in the employment discrimination context. 2002 U.S. Dist. LEXIS 12648, at *2-*3; *see also Vucitech*, 842 F.2d at 944. Therefore, the continuity factor does not change the Courts' conclusion that ACLG does not have successor liability for Klaes' claims against AATC, and AATC's Indiana contacts cannot be imputed to ACLG for the purposes of the personal jurisdiction inquiry.

Turning to the question of whether the Court can exercise specific jurisdiction over ACLG, Klaes argues that the nature and quality of ACLG's contacts with Indiana give rise to a finding of specific jurisdiction. Specific jurisdiction only requires modest contacts with

---

[3] In conjunction with a motion for leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d), Klaes filed several exhibits addressing events that occurred between the date she filed her response brief and March 2010 to illustrate the ongoing relationship between Meiners and ACLG. ACLG did not oppose the motion. Klaes' Motion for Leave to File a Supplemental Pleading under Federal Rule of Civil Procedure 15(d) is hereby **GRANTED**. Dkt. No. 45.

the forum state, but those contacts must have substantial connection to the plaintiff's action. *See Burger King*, 471 U.S. 474-76. Therefore, in order to properly analyze Klaes' argument that the Court has personal jurisdiction over ACLG, the Court must first determine the nature of Klaes' claims.

Klaes brings a hostile work environment claim, a quid pro quo sexual harassment claim, and a retaliation claim which relates to her EEOC charge regarding the alleged hostile work environment and quid pro quo sexual harassment. The incident that the alleged quid pro quo sexual harassment arose out of undisputedly took place in Florida. ACLG's decision to terminate Klaes' employment with ACLG took place in Florida, but Klaes received notice of it in Indiana. Klaes' hostile work environment claim is more nebulous, but Klaes contends in her complaint that she was subjected to unsolicited and unwelcome sexual advances, requests for sexual favors and other conduct of a sexual nature throughout her employment. If Klaes can show that ACLG had minimum contacts substantially connected to any of her claims, that would be a sufficient showing for the Court to retain personal jurisdiction over ACLG. Given that Klaes' claims are all employment related, in order to make a showing of specific jurisdiction, Klaes must show that ACLG's contacts with Indiana relate to her employment with ACLG in Indiana or her termination therefrom. *See Charlesworth v. Marco Mfg. Co.*, 878 F. Supp. 1196, 1200-01 (N.D. Ind. 1995).

Klaes argues that her relationship with ACLG originated in Indiana when it hired her to work as a bookkeeper in Indiana on October 1, 2008, because she was located in Indiana at the time. However, she does not assert that the hiring decision was made in Indiana. Klaes further argues that beginning early October, ACLG communicated regularly

10

with her in Indiana.  Klaes also notes that she received her tax forms from ACLG in Indiana.[4]  The contacts that Klaes argues establish personal jurisdiction over ACLG are not sufficient to establish personal jurisdiction over ACLG in the context of Klaes' quid pro quo harassment claim.  First, neither party disputes that the alleged conversation that gives rise to the quid pro quo sexual harassment claim took place in Florida.  Klaes argues that the conversation took place regarding negotiations for a long term contract that would keep her in Indiana and, therefore, it is sufficient to establish personal jurisdiction in Indiana over ACLG.

However, merely contracting with an out of state party cannot automatically establish sufficient minimum contacts in the other party's home forum.  *See Burger King*, 471 U.S. at 478.  "Instead, we are directed to adopt a 'highly realistic' approach and to place the contract in the context of the entire transaction of which it is a part."  *Purdue Research Found.*, 338 F.3d at 781.  Here, the conversation itself, as well as other negotiations, occurred in Florida, and the contract never came to fruition.  Further, the negotiation was for an employment contract with a Florida business entity.  In fact, the alleged comments that gave rise to Klaes' claim were directly related to her future travel to Florida and what Meiners expected her to do when she traveled there.  Therefore, the quid pro quo harassment claim does not arise out of minimum contacts sufficiently related with Indiana.  Instead, Klaes traveled to Florida to negotiate a contract and Meiners allegedly inappropriately propositioned in that forum, and the proposition specifically involved future trips to Florida.  Accordingly, the contract negotiation does not give rise to personal

---

[4]As discussed above, AATC's contacts with Indiana cannot be imputed to ACLG for the purposes of the Court's personal jurisdiction analysis.

jurisdiction over ACLG in Indiana because it does not provide minimum contacts substantially connected to a claim in this case.

Next, Klaes' retaliation claim does not give rise to personal jurisdiction over ACLG. Klaes does not dispute that ACLG's decisions to both hire and fire her were made in Florida. She only argues that she was informed of them in this state. That is not sufficient for the court to invoke specific jurisdiction on the retaliation claim. *Charlesworth*, 878 F. Supp. at 1201.

Finally, with regard to Klaes' hostile work environment claim, there is simply not enough before the Court to give rise to personal jurisdiction over ACLG. ACLG did not recruit employees in Indiana, it merely allowed a former employee of AATC to continue working for it in Indiana. Klaes' choice to stay in Indiana was not necessitated by any business need of ACLG. Instead it was a privilege AATC extended to her as a courtesy when most of AATC's staff moved to Florida. ACLG does not appear to have either challenged or encouraged the arrangement. *Cf. Gallert v. Courtalds Packaging Co.*, 4 F. Supp. 2d 825, 829 (S.D. Ind. 1998) (holding that there is no personal jurisdiction over an out of state defendant where an employee lived an worked in Indiana for more than ten years while his employer was headquartered in another state even though his employer provided him with a telephone and a fax machine). Even taking, as the Court must, the facts in the light most favorable to Klaes, there is no indication that the hostile work environment continued after ACLG - AATC asset sale closed. Altogether, without imputing AATC's contacts with Indiana to ACLG, there is simply not enough to establish minimum employment related contacts between ACLG and Klaes to allow for specific jurisdiction in relation to Klaes' hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's, Advocate Consulting Legal Group, PLLC, motion to dismiss or, in the alternative, to transfer, is **GRANTED** and plaintiff's, Julia Ann Klaes, claims against ACLG are **DISMISSED**.

IT IS SO ORDERED this 3rd day of September, 2010.

```
_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana
```

Distribution to:

Amanda C. Couture
DELANEY & DELANEY
acouture@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Amy L. Garrard
GRAY ROBINSON, P.A.
amy.garrard@gray-robinson.com

Edward E. Hollis
BAKER & DANIELS - Indianapolis
eehollis@bakerd.com